IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEONTAE THOMAS,

     Plaintiff,

v.                                CASE NO. 4:15-cv-326-RH-GRJ

R.A. COLLINS, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 54, Defendants' Motion for

Summary Judgment. Plaintiff has not filed a response in opposition and the

time for doing so has expired.[1] The motion for summary judgment is,

therefore, ripe for review. For the following reasons, the undersigned

_____

[1] Defendants filed their motion for summary judgment on October 21, 2016. (ECF No. 54.) The Court issued a summary judgment notice to Plaintiff on October 24, 2016, directing him to file a response and any evidentiary materials by November 23, 2016. (ECF No. 55.) By February 8, 2016, however, Plaintiff had failed to comply. Accordingly, the Court issued an order to show cause directing Plaintiff to show cause by March 10, 2017, as to why Defendants' motion should not be granted. (ECF No. 59.) Plaintiff subsequently filed a "motion for discovery" on March 6, 2017. (ECF No. 60.) The Court denied the motion and ordered Plaintiff to show cause by April 5, 2017, why the motion should not be granted. (ECF No. 61.) Plaintiff was advised that failure to timely respond would result in a recommendation to the district judge that the motion be granted. (*Id.*) As of the date of this report and recommendation Plaintiff has failed to respond.

recommends that Defendants' motion for summary judgment should be granted.

## I. INTRODUCTION

Plaintiff, a *pro se* litigant in the custody of the Florida Department of Corrections ("FDOC") and presently confined at Everglades Correctional Institution, initiated this action under 42 U.S.C. § 1983. (ECF No. 1.)[2] Plaintiff then filed a second amended complaint on November 30, 2015. (ECF No. 22.)[3]  Plaintiff alleges Defendant Officer Shamerria McGriff failed to protect Plaintiff from an inmate attack by failing to timely call for help, in violation of the Eighth Amendment.  Plaintiff further alleges Defendant Captain Richard Collins was deliberately indifferent to Plaintiff's serious medical needs by denying Plaintiff a post-use-of-force decontamination shower prior to transporting Plaintiff to the hospital's emergency room, in violation of the Eighth Amendment. Plaintiff seeks compensatory and punitive damages as relief.

---

[2] Plaintiff subsequently filed an amended complaint, which the Court dismissed for failure to state a claim. (ECF Nos. 7, 18, 21.) Plaintiff was nonetheless granted leave to file a second amended complaint. (ECF No. 21.)

[3] Plaintiff's second amended complaint brings claims against seven defendants: (1) Captain R.A. Collins; (2) Officer Shamerria McGriff; (3) Nurse Dallas; (4) Nurse Davis; (5) Officer Roberts; (6) Sergeant Robinson; and (7) Sergeant Miller. (ECF No. 22.) The Court declined, however, to serve five of the defendants. (ECF No. 24.)

Pursuant to Fed. R. Civ. P. 56(c),

> [a] party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
>> (A) citing to particular parts of materials in the record,
>> including depositions, documents, electronically stored
>> information, affidavits or declarations, stipulations (including
>> those made for purposes of the motion only), admissions,
>> interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the
>> absence or presence of a genuine dispute, or that an adverse
>> party cannot produce admissible evidence to support the fact.

Furthermore, under Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact or fails
> to properly address another party's assertion of fact as required
> by Rule 56(c), the court may:
>> (1) give an opportunity to properly support or address the
>> fact;
>> (2) consider the fact undisputed for purposes of the
>> motion;
>> (3) grant summary judgment if the motion and supporting
>> materials—including the facts considered undisputed—show
>> that the movant is entitled to it; or
>> (4) issue any other appropriate order.

Defendants have filed evidentiary materials in support of their motion for summary judgment. (ECF Nos. 51-1, 54-2, 54-3, 54-4, 54-5, 56-1, 56-2.) Plaintiff, however, declined to submit either a response to the motion for summary judgment or submit any evidentiary materials in opposition to summary judgment.

Although Plaintiff did not submit any sworn affidavits or other evidentiary materials in opposition to summary judgment, Plaintiff's second amended complaint is signed under penalty of perjury. (ECF No. 22.)[4] Thus, Plaintiff's second amended complaint is properly treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). Accordingly, Plaintiff's sworn allegations in his amended complaint may be considered in ruling on the motion for summary judgment.

## II. EVIDENCE

### *Assault/Use-of-Force*

On April 12, 2015, sometime around 1:50 or 1:55 p.m., Officer McGriff observed Plaintiff and another inmate arguing in the dormitory dayroom at Jefferson Correctional Institution ("Jefferson CI"). (ECF No. 54-1, 11:9–17 ("Pl. Dep."); ECF No. 54-2 at 1 ("IR").) At the time, Officer

---

[4] All of the declarations filed by Defendants in support of their motion for summary judgment were unsworn declarations made under penalty of perjury.

McGriff was alone inside the officers' station. (*Id.*; ECF No. 56-1, ¶ 3 ("McGriff Dec.").) Officer McGriff ordered them to stop but to no avail. (IR at 1; McGriff Dec. ¶ 3.) Officer McGriff then activated the Incident Command System ("ICS") alerting that there were disorderly inmates. (*Id.*)

After Plaintiff and the other inmate briefly stopped arguing, Officer McGriff observed the other inmate return to the dayroom wielding a homemade knife. (*Id.*) McGriff advised the response team that the inmates were fighting and that weapons were involved. (*Id.*) Plaintiff says, however, he does not believe Officer McGriff radioed for help. (Pl. Dep. 11:18–25.)

Plaintiff says he ran toward the officers' station to seek help. (Compl. at 5.) Officer McGriff says Plaintiff did not do so. (McGriff ¶ 3.) The knife-yielding inmate approached Plaintiff and began striking Plaintiff with the knife. (ECF No. 22 at 5 ("Compl."); McGriff Dec. ¶ 3.) Other inmates joined in the fight. (McGriff Dec. ¶ 3.) During the altercation, Officer McGriff remained in the officers' station behind the window watching with a walkie-talkie. (Compl. at 5; Pl. Dep. 11:16–17.)

A response team arrived at the dormitory at approximately 2:00 p.m. (Compl. at 5; McGriff ¶ 3.) The response team removed their chemical agent canisters and ordered the inmates to drop their weapons. (Compl. at

5.) One of the inmates refused to drop his knife and ran toward Plaintiff stabbing Plaintiff several more times. (*Id.* at 6.) The response team subsequently administered chemical agents. (*Id.*) Plaintiff was sprayed with chemical agents in the facial area once in an attempt to bring him into compliance with orders. (IR at 4.) The inmates were compliant by 2:05 p.m. (*Id.*)

Michael Hugh Harrell, Assistant Bureau Chief of Security Operations in the FDOC, is responsible for assisting with coordinating the security operations for statewide coordination, reviewing and developing security procedures within the FDOC, and ensuring proper security staffing levels. (ECF No. 54-3, ¶¶ 1–2 ("Harrell Dec.").) Mr. Harrell is also involved with security audits, operation reviews, the emergency action center, and emergency management of critical incidents. (*Id.* ¶ 2.)

According to FDOC policy and procedure, once the inmates became disorderly in the dorm, Officer McGriff was required to activate ICS, which would illicit an immediate emergency response by additional security staff members and is used for addressing and handling emergencies. (*Id.* ¶ 3.) When the situation escalated and weapons became involved, Officer McGriff was then required to alert responding security staff of the

increased threat. (*Id.*) According to ICS protocol, Officer McGriff was not to

leave the officers' station. (*Id.* ¶ 4; McGriff Dec. ¶ 4.)

> During emergencies where one officer is present, it is risky to leave the officers' station and render aid or to intervene in a fight immediately without backup being present. In an open-bay style dorm with many inmates present, a solitary officer leaving the officer's station is a security risk that should not be taken lightly. There is a possibility that the emergency could be a diversion or a hoax designed to draw the officer out, where the inmates can cause additional harm to staff or to facility security. In addition, the officer must be present to let the response team and/or medical staff into the dorm and to call for additional aid as needed.

(Harrell Dec. ¶ 4; McGriff Dec. ¶ 4.)

Mr. Harrell avers Officer McGriff responded appropriately according

to FDOC procedures and training. (Harrell Dec. ¶ 4.) Times of incidents

provided in the incident reports and disciplinary reports are approximations,

as the officer is generally paying more attention to the situation than

keeping track of the exact time. (*Id.* ¶ 5.) Reports are written after the fact

and the writer must estimate the times that events occurred. (*Id.* ¶ 6.) Mr.

Harrell concludes that given the approximations that the incident began

between 1:50 and 1:55 and that the response team responded at 2:00

p.m., the response time in this incident was appropriate. (*Id.*) The inspector

general also reviewed the incident report and determined that it complied

with rules and procedures. (IR at 7.)

### *Post-Assault/Use-of-Force*

After chemical agents were administered, Plaintiff fell to the floor. (Compl. at 6.) He was bleeding from his head, left arm, and several other areas where he had been stabbed. (Compl. at 6; Pl. Dep. 13:8–13.) An inmate helped Plaintiff off the floor and another inmate placed a towel on Plaintiff's head and wrapped a sock around Plaintiff's arm. (Compl. at 6.) According to Plaintiff, Captain Collins, who had arrived with the response team, ordered that no one touch Plaintiff's head. (*Id.*; Pl. Dep. 13:14–21.) Captain Collins disputes this account, however, because he was unable to report to the scene while the fight and subsequent use of force was in progress as he was attending to another issue in the prison. (ECF No. 56-2, ¶ 3 ("Collins Dec.").)

After the attack the inmates subsequently rushed Plaintiff out of the dormitory to medical. (Compl. at 6.) The other inmates involved in the altercation were escorted out of the dorm by the response team. (McGriff Dec. ¶ 3.) As soon as Captain Collins had completed attending to the other issue, he then reported to the confinement dorm where the other inmates involved in the altercation were showering prior to their post-use-of-force

exams. (Collins Dec. ¶ 3.)

Plaintiff arrived to medical at approximately 2:30 PM, ambulatory, alert, oriented, and responding to questions verbally. (ECF No. 54-5 at 3–59, at 3 ("MR").) Plaintiff complained of lacerations, difficulty breathing, lightheadedness, dizziness, and a burning sensation on his skin. (Compl. at 6; MR at 3.) A nurse rinsed out Plaintiff's eyes and told him that the burning sensation would wear off. (Compl. at 6; Pl. Dep. 18:1–6.) The nurse then cleaned out Plaintiff's wounds. (Compl. at 6.)

When Captain Collins arrived at medical, Plaintiff told Captain Collins that his skin was burning, he could not breathe, and he felt lightheaded and dizzy. (*Id.*; Pl. Dep. 18:21–25.) Plaintiff says Captain Collins denied Plaintiff's requests to take a decontamination shower. (Compl. at 7; IR at 5.) Captain Collins, however, says medical staff made the call not to provide Plaintiff with a shower. (Collins Dec. ¶ 5.)

According to Department Rule 33-602.210, in effect in April 2015,

[a]ll inmates exposed to chemical agents shall be ordered to shower in cool water and change inner and outer garments within 20 minutes from the last application of chemical agents, unless there is a documentable emergency resulting in an extension of this time frame or unless the inmate refuses to participate in the decontamination process.

(*Id.* ¶ 4.) Captain Collins told Plaintiff he was going to be taken to an

outside hospital because his injuries were serious enough to require outside emergency care. (Pl. Dep. 18:20–21; ECF No. 54-5 at 1–2, ¶ 3 ("Maier Dec."); Collins Dec. ¶ 5.)

Pressure dressings were applied to Plaintiff's wounds and he was transported to Tallahassee Memorial Hospital ("Tallahassee Memorial"). (Compl. at 7; MR at 3, 5.) During the two hours and forty-five minutes it took to transport Plaintiff to the hospital, Plaintiff says he was covered in chemical agents, continued bleeding, and had difficulty breathing, lightheadedness, and dizziness. (Compl. at 7.)

Upon arrival to Tallahassee Memorial, Plaintiff complained of severe pain to palpation when he moved his arm or head. (Maier Dec. ¶ 3; MR at 15.) Examination revealed a 6–7 centimeter laceration to the occipital area of the head, a 0.75 centimeter laceration to the left arm, a 0.2 centimeter laceration to the left shoulder, and a 0.15 centimeter puncture to the right upper shoulder. (Maier Dec. ¶ 3; MR at 16.) There was, however, minimal bleeding. (MR at 15.) Plaintiff received six staples for the laceration on his head and six sutures for the wound on his left arm. (Compl. at 7; Maier Dec. ¶ 3; MR at 17.) The other lacerations and puncture wounds did not require sutures. (MR at 16.)

Plaintiff returned to Jefferson CI at approximately 10:30 p.m. (Compl. at 7.) During a pre-special housing health evaluation at approximately 11:00, Plaintiff had no medical complaints. (MR at 20.) He says he was subsequently placed in administrative confinement and not permitted to shower for two days. (Compl. at 7.) During that period, he says that he continued to have a burning sensation and irritation on his skin. (*Id.*)

Albert Carl Maier, M.D., J.D., Senior Physician for the FDOC, attests,

[i]t was wise, prudent, safe and proper to delay immediate showering after use of chemical agents in this case. Most wounds, whether sutured, stapled, taped, steristripped or just left open are water tight after 36–48 hours and after that period may be washed. To assure less infection until the wound has achieved water tight status, no water for 24–48 hours is the recommended practice.

(Maier Dec. ¶¶ 1, 4.)

On April 14, 2015, at approximately 6:20 p.m., Plaintiff reported that his staples and head hurt. (MR at 21.) There was no active bleeding, embedded foreign material in his wounds, or discharge. (*Id.*) Plaintiff was provided Ibuprofen and instructed to wash the area with soap and water. (*Id.* at 22.)

The next day during regular confinement rounds, Plaintiff said he needed to see medical because the chemical agent was in his head

wound. (*Id.* at 24, 26.) Plaintiff was instructed to sign up for sick call concerning a medical problem. (*Id.* at 26.)

On April 26, 2015, Plaintiff submitted a sick-call request for migraine headaches and left arm numbness, which he had been experiencing since receiving the sutures. (*Id.* at 33.) Plaintiff was subsequently seen in medical the following day. (*Id.* at 35.)

Plaintiff says he now suffers from dizzy spells and pain around the area on his head that had been lacerated. (Compl. at 8.) Dr. Maier avers there is nothing in Plaintiff's medical records, or the medical literature, to corroborate that use of chemical agents is the cause of long-term pain or dizziness. (Maier Dec. ¶ 5.) Dr. Maier attests that there is no medical evidence after April 2015, that Plaintiff continued experiencing dizziness or head pain. (*Id.*; MR at 36–59.) In addition, Dr. Maier says the "services provided at Tallahassee Memorial were correct and proper for the presented injuries. It is not unusual for lacerations after repair to remain uncomfortable for several months as subcutaneous wound healing continues. This is a component of normal traumatic wound hea[l]ing and is necessary for optimal long-term repair." (Maier Dec. ¶ 5.)

# III. STANDARD OF REVIEW

In accordance with Rule 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988.) But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that

we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based

on subjective beliefs are insufficient to create a genuine issue of material

fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d

1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

Defendants contend they are entitled to summary judgment as a

matter of law because Officer McGriff responded reasonably and timely to

the situation in accordance with FDOC policy and training. Regarding

Captain Collins, Defendants contend Collins was not deliberately indifferent

to a serious medical need because medical determined a shower was not

appropriate in light of the need for emergency care. Moreover, even if

Captain Collins ultimately was responsible for that determination, there is

no evidence either of an objectively serious medical need or that Captain

Collins had a subjective knowledge of a risk in determining that a shower

was not appropriate. Defendants further contend they are entitled to

qualified immunity in their individual capacities.

## A.  Defendant McGriff

The Eighth Amendment provides the right to be free from cruel and

unusual punishment. U.S. Const. amend. VIII. "When officials become

aware of a threat to an inmate's health and safety, the [E]ighth

[A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). An Eighth Amendment violation for deliberate indifference to prisoner safety occurs when (1) there is a substantial, particularized threat or fear of serious harm, (2) of which the defendant is subjectively aware, and (3) the defendant does not respond reasonably to the risk. *Rodriguez v. Sec'y for the Dep't of Corrections*, 508 F.3d 611, 617 (11th Cir. 2007); *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003).

Negligent failure to protect an inmate, however, does not rise to the level of a constitutional violation. *Brown*, 894 F.2d at 1537. Instead, the prison official must have been deliberately indifferent to a known danger, whereby there is a strong likelihood the inmate will be injured rather than a mere possibility. *Id.* "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

It is undisputed there was a serious risk of harm to Plaintiff once the other inmate returned to the dayroom with a knife. Officer McGriff also admits that she recognized a risk of serious harm to Plaintiff as soon as

she saw the knife. (ECF No. 54 at 15.) The question, therefore, is whether

Officer McGriff responded reasonably to that risk.

Viewing the evidence in the light most favorable to Plaintiff, no

reasonably jury could conclude that Officer McGriff responded

unreasonably to the risk of harm. It is undisputed that Officer McGriff was

in the officers' station alone. Plaintiff does not dispute that Officer McGriff

was not supposed to leave the officers' station.[5] Plaintiff admits that he saw

Officer McGriff with a walkie-talkie. The undisputed evidence demonstrates

Officer McGriff, as required by FDOC protocol, immediately activated the

ICS when the incident began as a disorderly and then appropriately made

a follow-up call as soon as weapons became involved.

Although Plaintiff says he does not think Officer McGriff called

anyone, he nonetheless concedes the response team entered at 2:00 p.m.

Additionally, Plaintiff's unsupported assertion that Officer McGriff did not

call anyone is nothing more than speculative and is based on the times

_____

[5] Although there is a dispute as to whether Plaintiff ran to the officers' station calling for help, Plaintiff nonetheless admits Defendant McGriff was not supposed to come out of the officers' station. *See* Pl. Dep. 32:6–10.

provided in the reports.[6]

Furthermore, Plaintiff has presented no evidence other than his unsubstantiated allegation, that the response time was inadequate. On the other hand, Defendants have provided evidence that the response time in this case was more than adequate. Defendants have also provided evidence that Officer McGriff responded appropriately according to FDOC procedures and training. No reasonable jury could conclude that Officer McGriff, alone in the officers' station during a multiple-inmate, weapon

---

[6] During Plaintiff's deposition the following exchange took place:

Q. And how do you know she wasn't calling for help or anything like that?
A. She – she is standing in the window with the walkie-talkie.
Q. Well, could she have been radioing for somebody to come?
A. I – I mean, I doubt it. Because from the disciplinary report that she wrote, it happened at 1:50. Use of force came in at two o'clock. So that's ten minutes later. So, this done happened for ten minutes. This been going on for ten minutes.
. . . .
Q. Okay. And so, if she had called sooner, they would have come in sooner?
A. They would've been there sooner.
Q. Okay. Now, so you're basing that off the time on the DR and the time on the use of force report, because she was in the officer's station by herself –
A. Yes, ma'am.
Q. – but you don't have anybody who can verify what she was doing?
A. Yeah. I got witnesses that – that she stood in the officer's station. She just stood there. I don't know if she was trying to be an all right officer and just let this go down like this and not call nobody, or whatever the case may have been. I know she just stood in the window with the walkie-talkie.

(Pl. Dep. 11:14–25, 31:14–25, 32:1–5.)

*Case No: 4:15-cv-326-RH-GRJ*

wielding brawl, acted unreasonably. Although Plaintiff suffered injuries as a result of an unfortunate attack, he has failed to present any evidence demonstrating that Officer McGriff responded unreasonably to his risk of harm. Accordingly, Officer McGriff is entitled to summary judgment as a matter of law.

### B. Defendant Collins

Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An Eighth Amendment claim contains both an objective and subjective component. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Under the objective prong, a plaintiff must present evidence of an objectively serious medical need. *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). In either case, however, "the medical need must be one

that, if left unattended, poses a substantial risk of serious harm." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing *Farrow*, 320 F.3d at 1243).

Under the subjective prong, a plaintiff must provide evidence that the defendant acted with deliberate indifference to that serious medical need. *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). The Eleventh Circuit has clarified that under this prong, the plaintiff must prove that the defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) did so by conduct that is more than gross negligence. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Subjective knowledge of a risk of serious harm requires that the defendant actually knew of the risk of serious harm. *Goodman*, 718 F.3d at 1331–32. The prisoner must demonstrate that the defendant's response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Incidents of negligence or medical malpractice, however,

do not rise to the level of a constitutional violation. *Harris v. Thigpen*, 941

F.2d 1495, 1504 (11th Cir. 1991); *Estelle*, 429 U.S. at 105–06 (neither

"inadvertent failure to provide adequate medical care" nor "negligen[ce] in

diagnosing or treating a medical condition" amounts to deliberate

indifference to a serious medical need).

Furthermore, a plaintiff alleging an Eighth Amendment violation must

show that the injury was caused by defendant's wrongful conduct. *Goebert*

*v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff says he told Captain Collins in medical that his skin was

burning, he was having difficulty breathing, and he was lightheaded and

dizzy following the use of chemical agents. Even assuming this constitutes

evidence of an objectively serious medical need of which Captain Collins

was aware, Plaintiff has failed to identify any evidence in the record

demonstrating that Captain Collins was deliberately indifferent to his

serious medical need.

The parties dispute whether Captain Collins or an institutional

medical professional denied Plaintiff's requests for a decontamination

shower prior to emergency transport. Nonetheless, viewing the evidence in

the light most favorable to Plaintiff, even if Captain Collins denied Plaintiff's requests for a decontamination shower, no reasonable jury could conclude that Captain Collins disregarded any risk to Plaintiff because Plaintiff was in medical at the time undergoing examination for his injuries by medical professionals.

While there may be a dispute about whether Plaintiff was taken to medical by staff or by inmates, it makes no difference because Plaintiff admits he was immediately brought to medical, with no delay. Thus, there is no claim in this case that Captain Collins was deliberately indifferent to Plaintiff's medical needs by delaying taking him to medical for emergency treatment. And once Plaintiff was in medical and under the care of the medical professionals, the determination of whether Plaintiff should have been given a shower before his transport to the hospital for emergency treatment was by its very nature a medical decision and not a decision that would be made by a correctional officer.

Even assuming, however, that Captain Collins had subjective knowledge that Plaintiff faced a serious risk of harm from the chemical agents, and that he disregarded those risks by denying Plaintiff a

decontamination shower prior to emergency transport, no reasonable jury could conclude that Captain Collins' decision not to take Plaintiff to a shower but instead have him transported to the hospital for emergency treatment evidences deliberate indifference to Plaintiff's medical needs.

To the contrary the undisputed evidence demonstrates that in addition to other bleeding wounds, Plaintiff had a 6–7 centimeter bleeding stab wound to his head that required emergency care. Plaintiff was transported immediately to Tallahassee Memorial. If anything, had Officer Collins ordered Plaintiff to take a decontamination shower rather than transporting him to the emergency room despite the advice of medical professionals, Plaintiff might then have a claim for deliberate indifference. Plaintiff's more serious—and life threatening—injuries were appropriately dealt with first. Accordingly, the Court concludes that Plaintiff has failed to demonstrate Captain Collins was deliberately indifferent to Plaintiff's serious medical needs.[7]

---

[7] To the extent Plaintiff says he was denied a decontamination shower for two days upon returning to Jefferson CI from the hospital, there is no evidence that Captain Collins had anything to do with denying Plaintiff's requests for a shower. *See Goebert*, 510 F.3d at 1327 ("The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm. . . . . Causation, of course, can be shown by personal participation in the constitutional violation."). In

## C. Qualified Immunity

Because Plaintiff has not demonstrated Defendants violated his

constitutional rights and because Plaintiff cannot demonstrate that the law

was clearly established to a reasonable officer that an inmate must be

given a decontamination shower even where he has an immediate need for

emergency medical treatment, Defendants are entitled to qualified

immunity.

"[G]overnment officials performing discretionary functions generally

are shielded from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982). To determine whether qualified immunity applies to a

government official performing a discretionary function, a court must

consider two factors: (1) whether the evidence shows that the official's

conduct violated a constitutional right; and (2) whether the right was clearly

_____

addition, the evidence demonstrates that it was safe and proper to delay showering
after use of chemical agents in this case for up to 48 hours to assure less infection until
Plaintiff's wounds achieved water-tight status. Thus, even assuming Captain Collins
was involved in denying Plaintiff a shower, no reasonable jury could conclude Captain
Collins disregarded any risk of serious injury by more than gross negligence.

established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the

discretion to address the two prongs in either order. *Id.* "The relevant,

dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202

(2001).

The undisputed evidence demonstrates that Officers McGriff and

Collins were government officials acting within their discretionary authority.

"Discretionary authority" includes all actions by a government official that

"were undertaken pursuant to the performance of his duties," and were

"within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th

Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). It

is undisputed that the assault took place while Officer McGriff was

supervising the dorm. It is also undisputed that the denial of a

decontamination shower occurred while Captain Collins oversaw Plaintiff's

post-use-of-force examination. Plaintiff does not dispute that the officers'

actions were taken in the course of performing their duties as correctional

officers. Consequently, unless Plaintiff cannot demonstrate that

Defendants violated Plaintiff's clearly established constitutional rights of which a reasonable officer would have known, Defendants are entitled to qualified immunity.

Plaintiff has pointed to no authority clearly establishing the principle that a correctional officer violates an inmate's constitutional rights where the sole officer in the dorm remains in the officers' station, and radios for help from the response team during an altercation between inmates involving weapons in compliance with FDOC protocol. Likewise, Plaintiff has failed to point to any authority clearly establishing that a captain violates an inmates's constitutional rights by denying him a post-use-of-force decontamination shower prior to emergency transport to a hospital where the institutional medical professionals have deemed it medically necessary for the prisoner to receive immediate medical attention for his stab wounds. Nor has the Court located any authority clearly establishing that Defendants' actions violate an inmate's constitutional rights of which a reasonable officer would have known.

Accordingly, even assuming Defendants violated Plaintiff's constitutional rights—which they clearly did not—Defendants are,

nonetheless, entitled to qualified immunity.[8]

Accordingly, Defendants are entitled to summary judgment as a

matter of law.

## V. CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' Motion for Summary Judgment, ECF No. 54, should be
**GRANTED**.

**IN CHAMBERS**, at Gainesville, Florida, this 26th day of April, 2017.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations
must be filed within fourteen (14) days after being served a copy
thereof. <u>Any different deadline that may appear on the electronic
docket is for the court's internal use only, and does not control. A</u>**

---

[8] Captain Collins also argues Plaintiff is not entitled to compensatory or punitive
damages because there is no evidence of a corresponding physical injury as a result of
the denial of a post-use-of-force decontamination shower prior to transporting Plaintiff
to the emergency room. (ECF No. 54 at 23–25.) The Court need not address this
argument, however, because no reasonable jury could conclude that Captain Collins
was deliberately indifferent to Plaintiff's serious medical needs, and even if they did,
Captain Collins is nonetheless entitled to qualified immunity.

**copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.